

**ORDERED in the Southern District of Florida on May 3, 2019.**

**Mindy A. Mora, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

IN RE:                                          CASE NO. 19-10339-BKC-MAM

RAFAEL GOLAN,                                   CHAPTER 11

          DEBTOR.

_____/

**MEMORANDUM OPINION AND ORDER DENYING IN PART AND
GRANTING IN PART DEBTOR'S MOTION FOR SANCTIONS AND
GRANTING *ORE TENUS* MOTION FOR AN ORDER TO SHOW CAUSE**

THIS MATTER came before the Court on April 3, 2019 on the *Motion for Sanctions for Violation of the Automatic Stay Against Susan Golan* (the "Motion") (ECF No. 35). The debtor ("Debtor") seeks an order from this Court determining that the (i) entry of a final judgment (the "Final Judgment") in Debtor's state court divorce proceeding and (ii) filing of a motion to compel in that same proceeding by Debtor's ex-wife, Susan Vigder (the "Ex-Wife"), violated the automatic stay. As a result, the

Debtor argues that the Final Judgment is either void or voidable. In addition, based upon an *ore tenus* motion, Debtor seeks an order to show cause why the ex-wife's marital attorney, Grant J. Gisondo ("Attorney Gisondo"), should not be held in contempt and sanctioned for violating the automatic stay.

For the reasons stated below, the Court denies the Motion to the extent it seeks to void the final judgment and deem its entry a stay violation, but grants the Motion to the extent it seeks to stay collection activities to enforce payment of Ex-Wife's legal fees. In addition, the Court will issue an order to show cause why Attorney Gisondo should not be held in contempt for violating the automatic stay.

## PROCEDURAL BACKGROUND

### The Divorce Proceeding

After eight years of contentious litigation, the Circuit Court in and for Palm Beach County, Florida (the "State Court") conducted a hearing in the couple's divorce proceeding on November 27, 2018. At the conclusion of that hearing, the State Court issued an oral ruling stating that, *inter alia*: (1) the parties were officially divorced; (2) Ex-Wife would receive the marital home as her past due and future alimony; and (3) Attorney Gisondo was entitled to legal fees in the amount of $20,000, which the State Court directed Debtor to pay (the "Oral Ruling"). The State Court judge requested that Attorney Gisondo prepare a written final judgment, circulate it to Debtor's marital counsel, Stuart House ("Attorney House"), and submit it for entry upon the State Court docket.

Attorney Gisondo prepared a draft judgment (the "Draft Judgment") and sent it to Attorney House, who failed to timely respond with his comments. At Ex-Wife's urging, Attorney Gisondo scheduled a hearing on January 16, 2019 (the "Final Hearing") to present the Draft Judgment to the State Court and thereby assure its entry.

### The Bankruptcy Filing and the Post-Petition Final Judgment

Immediately prior to the Final Hearing, Debtor filed a voluntary petition under chapter 11 on January 9, 2019 (the "Petition Date"). *See* Debtor's Exhibit 1. That same day, Debtor's bankruptcy counsel, Angelo Gasparri ("Attorney Gasparri"), filed a suggestion of bankruptcy on the State Court docket and served a copy of it on "all parties who have made an appearance on [sic] the case via the Florida E-Filing Portal." *See* Debtor's Exhibit 3.

Attorney Gisondo did not advise Ex-Wife about the bankruptcy filing, nor did any attorney or party present at the Final Hearing mention the commencement of Debtor's bankruptcy case (the "Bankruptcy Case"). During the Final Hearing, the State Court found that the Draft Judgment accurately memorialized the prior Oral Ruling. The State Court judge signed the Draft Judgment and directed the clerk of the State Court to enter it upon the docket.

The Final Judgment recounts the history of the couple's divorce proceeding and describes testimony by Debtor, Debtor's accountant, and Ex-Wife during several evidentiary hearings. *See* Debtor's Exhibit 4, at 2. The State Court found Debtor's testimony regarding his allegedly distressed financial condition not to be credible and

similarly questioned the veracity of the testimony offered by Debtor's accountant on the same issue. *Id.* at 4. The State Court expressed concern about Ex-Wife's ability to collect future alimony if the court awarded her periodic payments, particularly given that Debtor was already $89,000 in arrears on his existing temporary alimony payments. *Id.* at 5. As a result, in the Final Judgment, the State Court ordered the marriage dissolved, gave Ex-Wife title to the marital home as her past-due and future alimony, awarded Ex-Wife's counsel $20,000 in legal fees, and ordered Debtor to pay those fees. *Id.* at 6-7.

One month after entry of the Final Judgment (which was also approximately one month after the Petition Date), Debtor had still failed to execute the quitclaim deed in favor of Ex-Wife and likewise had not paid Attorney Gisondo's court-ordered legal fees. On February 28, 2019, Ex-Wife filed a motion (the "Motion to Compel") in the State Court seeking to compel Debtor to perform the acts mandated by the Final Judgment. *See* Debtor's Exhibit 11. Although Attorney Gasparri emailed Attorney Gisondo requesting withdrawal of the Motion to Compel, Attorney Gisondo failed to comply. *See* Debtor's Exhibit 6.

## Debtor's Schedules and SOFA

Debtor filed his initial schedules of assets and liabilities and statement of financial affairs in this bankruptcy case on January 23, 2019. In Schedule A, Debtor indicated that he did not own any real property. Debtor also neglected to include his Ex-Wife as a creditor in his schedules and in his creditor's matrix, and omitted the pendency of the divorce proceeding from his schedule of pending litigation. Because

of those omissions, Ex-Wife did not receive notice from this Court regarding the commencement of Debtor's Bankruptcy Case.

Immediately after Debtor's receipt of the Motion to Compel in the divorce proceeding, he amended his schedules to include (i) an interest in the marital home on Schedule A, (ii) his Ex-Wife as a creditor for past due alimony owed to her in Schedule F, (iii) the divorce proceeding as pending litigation in his Statement of Financial Affairs, and (iv) his Ex-Wife upon the creditor matrix. *See* ECF No. 31.

## The Sanctions Motion

One day later, on March 1, 2019, Debtor filed the Motion seeking sanctions for violation of the automatic stay pursuant to 11 U.S.C. §362(k) against Ex-Wife. Debtor premises his arguments upon the postpetition entry of the Final Judgment on the State Court docket and the postpetition filing of the Motion to Compel. Because both acts occurred postpetition, Debtor contends that (i) the Final Judgment is void or voidable, and (ii) both Ex-Wife and Attorney Gisondo violated the automatic stay.

Appearing pro se in the Bankruptcy Case, Ex-Wife filed several versions of a response to the Motion. *See* ECF Nos. 46, 48 and 60. Ex-Wife titled her filings as either a "response" to the Motion or a "motion to dismiss" the Motion and included a request that the automatic stay be lifted. At a preliminary hearing conducted on March 26, 2019, the Court determined that the complexity of the factual issues warranted an evidentiary hearing.

## The Evidentiary Hearing

The Court conducted the evidentiary hearing on April 3, 2019. At the

commencement of the April 3 hearing, the Court inquired why Attorney Gasparri had failed to subpoena Attorney Gisondo to appear at the hearing, considering Debtor's request for sanctions against him. Attorney Gasparri admitted that this failure was an oversight. Because Debtor's apparent goal was to obtain sanctions against both Ex-Wife and Attorney Gisondo, the Court announced that Attorney Gisondo's absence prevented the parties from proceeding with an evidentiary hearing on the Motion at that time.

Since all other parties were present, the Court offered Debtor the opportunity to proceed immediately with a hearing on the Motion on the condition that Debtor waive sanctions in connection with a stay violation. Alternatively, the Court offered to continue the evidentiary hearing so that Attorney Gasparri could correct his oversight and subpoena all required parties. After consulting with Debtor, Attorney Gasparri announced that Debtor agreed to waive his request for sanctions so that he might proceed with the Evidentiary Hearing that same day.[1]

During the Evidentiary Hearing, both Debtor and Ex-Wife submitted exhibits and testified in support of their respective positions. The Court observed that, during testimony, Debtor appeared uncertain about certain facts relating to his Bankruptcy Case and was noticeably evasive in response to questions about the Oral Ruling and the Final Judgment. By contrast, the Ex-Wife was forthright and clear in recounting

---

[1] By proceeding on April 3, 2019, Debtor limited his request for relief under the Motion to a determination of whether (i) the Final Judgment was potentially void or voidable, and (ii) the filing of the Motion to Compel violated the automatic stay.

the factual history of the couple's marriage and marital dispute, succinctly relaying facts that were obviously uncomfortable for her to describe.[2]

After Debtor and Ex-Wife completed their testimony, Debtor's counsel moved, *ore tenus*, for an order to show cause why Attorney Gisondo should not be held in contempt for violating the automatic stay.

At the end of the hearing, the Court took the matter under advisement. After considering the Motion, the Responses, the exhibits introduced and testimony adduced during the evidentiary hearing, as well as arguments of the parties, for the reasons stated below, the Court grants, in part, and denies, in part, the Motion, and grants Debtor's *ore tenus* motion for an order to show cause.

## Jurisdictional Statement

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (G), and (O).

## ANALYSIS

## The Automatic Stay

Upon the commencement of a bankruptcy case, the automatic stay goes into effect pursuant to 11 U.S.C. §362(a). The stay bars the continuation of any litigation seeking a recovery from the debtor or asserting a claim against estate property until

---

[2] During Debtor's testimony, he was unable to remember that the marital home was omitted from his original schedules and that it was only added as property of the estate on his amended schedules. During Ex-Wife's testimony, she revealed that she had bought the marital home in 1983, prior to her marriage to Debtor. Within two months after they married, Debtor demanded that Ex-Wife put the house in both of their names, or he would have the marriage annulled. Ex-Wife acquiesced to Debtor's demand to quitclaim an interest in the marital home to the two of them, as husband and wife, because she was so desperate to make her marriage to work.

the case is disposed of by the court. *See Carver v. Carver*, 954 F.2d 1573, 1576 (11th Cir. 1992).

Section 362(b) lists certain exceptions to the automatic stay. The pertinent subsections provide:

> (b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay— […]
> (2) under subsection (a)—
>    (A) of the commencement or continuation of a civil action or proceeding— […]
>       (ii) for the establishment or modification of an order for domestic support obligations; [or] […]
>       (iv) for the dissolution of a marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate; […]
>    (B) of the collection of a domestic support obligation from property that is not property of the estate . . . .

11 U.S.C. § 362(b).

This case implicates three of the exceptions to the automatic stay. The first exception excludes any civil action seeking the dissolution of a marriage, except to the extent that the action seeks to determine the division of bankruptcy estate property. *See* §362(b)(2)(A)(iv). The second exception covers the establishment or modification of an order for a domestic support obligation. *See* §362(b)(2)(A)(ii). The third exception permits collection of a domestic support obligation from property that is not property of the estate. *See* §362(b)(2)(B).

The Court must determine whether postpetition entry of the Final Judgment violated the automatic stay by (i) granting Ex-Wife sole title to the marital home as her alimony, (ii) liquidating her attorney's claim for fees due by Debtor, and (iii) directing Debtor to pay those fees. Debtor asserts that Ex-Wife (through counsel)

violated the stay twice: first, when Attorney Gisondo presented the Final Judgment for entry by the State Court, and second, when Attorney Gisondo filed the Motion to Compel commanding Debtor's compliance with the Final Judgment.

Ex-Wife contends that no stay violation occurred because the State Court pronounced its judgment in the divorce proceeding in the Oral Ruling, which was issued well before the Petition Date. Further advancing that argument, Ex-Wife insists that the State Court's entry of the Final Judgment was merely a ministerial act that related back to the November 13, 2018 hearing. Finally, Ex-Wife argues that, if this Court concludes that a stay violation occurred, the Court should nonetheless permit retroactive relief from the automatic stay to validate the Final Judgment.

Ex-Wife claims that Debtor's actions after the Oral Ruling support her contention that entry of the Final Judgment did not circumvent the automatic stay. On December 20, 2018, prior to the Petition Date, Debtor filed a verified motion to stay entry of Final Judgment and re-open presentation of evidence in the State Court.[3] Ex-Wife believes that this filing demonstrates Debtor's understanding of the Oral Ruling's finality.

As part of its analysis of any potential stay violation, the Court must initially determine whether the State Court's award of title to the marital home as Ex-Wife's alimony, and the award of legal fees to Ex-Wife's marital counsel, each constituted domestic support obligations.[4]

---

[3] The State Court denied the motion on January 16, 2019.

[4] The Final Judgment includes a division of funds (identified as the "custodia legis funds") held in the State Court registry. Because the parties submitted the custodia legis funds to the *in rem* jurisdiction

## **Domestic Support Obligations**

Through its enactment of 11 U.S.C. §362, Congress ensured that the federal district court, acting through the bankruptcy court, has exclusive jurisdiction over a debtor's assets upon the filing of a bankruptcy case. *See* 28 U.S.C. §1334(e) and §157. However, Congress also clarified that the state court retains jurisdiction over the dissolution of a marriage. The state court's jurisdiction encompasses the division of marital assets as well as the establishment and amendment of domestic support obligations. Because the plain language of § 362(b)(2) exempts domestic support obligations from operation of the automatic stay, the Court must first analyze whether both the award of title to the marital home and entitlement to legal fees constitute domestic support obligations. *See* 11 U.S.C. §362(b)(2)(A)(ii) and (iv).

What is a domestic support obligation? The definition of domestic support obligation in 11 U.S.C. §101(14A) states:

> (14A) The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
> (A) owed to or recoverable by—
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> (ii) a governmental unit;
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

---

of the State Court prior to the Petition Date, those funds are not included within Debtor's bankruptcy estate. To the extent that Debtor would nonetheless argue that such funds are property of his bankruptcy estate, this Court concurs with the decision of the State Court that the division of the custodia legis funds as set forth in the Final Judgment is equitable and appropriate.

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—

(i) a separation agreement, divorce decree, or property settlement agreement;

(ii) an order of a court of record; or

(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

This definition makes clear that a domestic support obligation is a debt. The term "debt" means "liability on a claim." *See* 11 U.S.C. §101(12). The term "claim" includes both a right to payment and a right to an equitable remedy. *See* 11 U.S.C. §101(5).

By parsing these definitions, the Court finds that the Final Judgment's award of title to the marital home to Ex-Wife as her past-due and future alimony constitutes a domestic support obligation. The State Court's award of title to the marital home to Ex-Wife was clearly fashioned as an equitable remedy. In the transcript of the November 27, 2018 hearing held in State Court, the State Court judge expressed his concern that Debtor would default on the payment of a monetary award of alimony, as he was already in arrears in the amount of $89,000 for past due alimony as of the hearing. *See* Ex-Wife's Exhibit C, at pp. 8-17. To avoid the necessity of Ex-Wife having to regularly enforce payment of a monetary award of alimony, the State Court fashioned an equitable remedy and awarded Ex-Wife title to the marital home in lieu of past due and future alimony. *Id.*

The Final Judgment also awarded legal fees to Ex-Wife's counsel and directed Debtor to pay those fees to such counsel. This award raises the question of whether the legal fees payable by a debtor for his ex-spouse's counsel gives rise to a domestic support obligation. In analyzing this issue, courts have considered whether the attorneys' fees were incurred in connection with obtaining alimony or child support from the payor spouse, and whether the fees were ordered to be paid by the payor spouse because of the relative financial condition of each of the spouses. As noted by the court in *In re Palomino*, 355 B.R. 349 (Bankr. S.D. Fla. 2006):

> [C]ourts have looked at the basis for the state court's decision in awarding the fees. If the fees were awarded to the wife based on the state court's finding of need and the relative financial position of the parties, then, using state law as a guide, the court has found the award of payment of attorney fees itself was in the nature of support and therefore nondischargeable.

*Id.* at 356.

Further, for legal fees incurred by a spouse in connection with a marital dissolution or child support action to constitute a non-dischargeable domestic support obligation, courts have required that the non-paying spouse would otherwise be liable to her or his counsel for such fees if the payor spouse failed to pay them. *In Simon, Schindler & Sandberg, LLP v. Gentilini (In re Gentilini),* 365 B.R. 251 (Bankr. S.D. Fla. 2007), the bankruptcy court explained this requirement:

> [B]oth elements of the statute must be established to except a debt from discharge under §523(a)(5). The debt must be in the nature of support, but also must be a debt to the former spouse or child. This "debt to" element can be satisfied when the obligation is payable directly to a third party, typically a professional who provided services to benefit the wife or child, but only if the former spouse is also obligated for the fees. In that instance, the former spouse will be impacted if the debt is discharged and therefore it is reasonable to treat it in substance as a

debt "owed to her" under the statute. However, if only the debtor is obligated and discharge will have no financial impact on the former wife, this Court finds no reasoned basis for expanding the "debt to" element in the statute in order to apply §523(a)(5) solely for the protection of third party professionals.

*Id.* at 256-257.

In the Final Judgment, the State Court found that, based upon the relative financial condition of Debtor and Ex-Wife, "the Wife has a need for the Husband's contribution towards her attorney's fees, and the Husband has the ability to pay." *See* Debtor's Exhibit 4, at ¶ 21. The State Court made this finding after noting that Ex-Wife has a "meager income of $819.00 per month" while Debtor appears to be making enough income through his businesses that he can fund living expenses of $6,554.00 per month. *Id.* at ¶¶ 13-18.

The Court finds that the State Court's liquidation of Ex-Wife's legal fees created an additional domestic support obligation because the fees were incurred in connection with the establishment of alimony due to Ex-Wife. It is clear from the remarks made by the State Court judge about the respective financial conditions of Debtor and Ex-Wife that the judge believed that Debtor was in a better financial position than Ex-Wife to pay such fees. *See* Ex-Wife's Exhibit C, at pp. 8-17. Because Ex-Wife retained her marital counsel, Ex-Wife continues to be liable for the legal fees due her counsel if Debtor fails to pay such fees. As a result, the Court concludes that the legal fees due Ex-Wife's counsel constitute an additional domestic support obligation.

## Property of the Estate

Debtor argues that even if the award of title to the marital home constitutes a domestic support obligation, Debtor's interest in the marital home is property of the estate pursuant to 11 U.S.C. §541. As a result, Debtor asserts that the Final Judgment violated 11 U.S.C. §362(b)(2)(A)(iv), which provides that the exception to the automatic stay for an order dissolving a marriage excludes orders that attempt to divide property that is property of the estate. Debtor also contends that the Final Judgment violates the automatic stay under 11 U.S.C. §362(b)(2)(B) because it purports to award alimony from property of the estate.

This is an interesting position for Debtor to espouse because, initially, Debtor agreed with the State Court that he no longer had an interest in the marital home following the Oral Ruling. Debtor exhibited this position in at least two ways. First, on December 20, 2018, Debtor filed a verified motion to stay entry of final judgment and to re-open testimony and evidence (the "Motion to Stay") in the State Court. *See* Ex-Wife's Exhibit A. The filing of the Motion to Stay demonstrates that Debtor understood that he had lost any interest in the marital home based upon the Oral Ruling. Second, Debtor failed to list an interest in the marital home in his original schedules of assets and liabilities filed in this Court under penalty of perjury. *See* ECF No. 12 (also identified as Ex-Wife's Exhibit F), at p. 3. By not scheduling the marital home on Schedule A as real property in which he had a legal or equitable interest, Debtor implicitly conceded that the marital home was not property of the estate.

However, approximately one month after Debtor filed his original schedules, Debtor filed an amended set of schedules. In his amendment, Debtor included the marital home as an asset, the past due alimony owed to Ex-Wife as a debt, and Ex-Wife as a party entitled to notice on the creditor matrix in this case. *See* ECF No. 31 (also identified as Debtor's Exhibit 5), at pp. 3, 10.

The Court cannot help but consider the timing of these amended schedules in the context of the relief sought by Debtor. When Ex-Wife and her counsel filed the Motion to Compel seeking an order directing Debtor to execute the quitclaim deed to the marital home in favor of Ex-Wife and to pay Ex-Wife's attorney's fees, Debtor must have finally realized that the Final Judgment had been entered after the Petition Date, and apparently developed his argument that a stay violation had occurred. There was only one problem. Debtor had not listed the marital home as an asset of his bankruptcy estate, nor his Ex-Wife as a creditor to whom alimony was due. In order to seek sanctions against Ex-Wife and her counsel, Debtor had to first amend his schedules. *See* Debtor's Exhibit 5, at p. 3, 10. The amendment allowed Debtor to argue that a stay violation had occurred, and provided a basis to file the Motion.

The question then arises whether a subsequent amendment to Debtor's schedules that added the marital home as property of the estate could retroactively create a stay violation, or whether Debtor is judicially estopped from arguing that a stay violation occurred when Ex-Wife and her counsel acted in reliance on Debtor's original schedules.

15

The Court finds that Debtor's eleventh-hour amendment to his schedules contradicts both the Motion to Stay and his original schedules, which he filed under penalty of perjury. Further, for the Debtor to suddenly adopt the stance that the marital home constituted property of the estate appears to be a change of position arising in the exigency of the moment, and indicates an intention to make a mockery of the judicial system.

Facts and circumstances demonstrating Debtor's intent to use his bankruptcy case as a "weapon" against Ex-Wife include Debtor's (i) relative level of sophistication,[5] (ii) decision to amend the schedules within days of filing a motion for sanctions against Ex-Wife, (iii) lack of prior disclosure despite Debtor's active participation in the divorce proceedings over the course of the eight years preceding the Petition Date, (iv) failure to list Ex-Wife on the creditor matrix prior to the amendment, (v) timely disclosure of other pending litigation,[6] but not litigation regarding his asserted interest in the marital home, and (vi) lack of credible testimony regarding the reason for the original omissions. *Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1185 (11th Cir. 2017). Collectively, the Court finds that these facts unequivocally indicate Debtor's intent to make a mockery of the judicial system. *Id.* The Court therefore concludes that Debtor's last-minute amendment to his schedules did not create a stay violation where one previously had not occurred.

---

[5] The transcript of the State Court proceedings states that Debtor historically earned "hundreds of thousands of dollars" in his chosen profession, which indicates that he has shown proficiency in the business world. ECF No. 60 (also identified as Ex-Wife's Exhibit C), Exhibit 1, at 5:20-24.

[6] ECF No. 12, pp. 65-66.

Another reason exists for the marital home not to be considered property of the estate. Accepting as true Debtor's assertion that the Oral Ruling was ineffective as a ruling of the State Court and the Final Judgment is void (which the Court does not adopt), then the Court must also find that dissolution of Debtor and Ex-Wife's marriage was equally ineffective. In that instance, the marital home would constitute tenancy by the entirety property, as it was owned by Debtor and Ex-Wife as husband and wife, without an express contrary intent to hold title to the property in another fashion. *See* Debtor's Exhibit 8; *Dillworth v. Hinton (In re Hinton),* 378 B.R. 371, 377 (Bankr. M.D. Fla. 2007) (with respect to real property acquired in the name of husband and wife, a rule of construction exists that a tenancy by the entireties is created, absent fraud).

Tenancy by the entirety property is property held in the name of a husband and wife that possesses six characteristics:

> (1) unity of possession (joint ownership and control); (2) unity of interest (the interests in the account must be identical); (3) unity of title (the interests must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously); (5) survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their joint names).

*Beal Bank, SSB v. Almand and Associates*, 780 So.2d 45, 52 (Fla. 2001). Debtor and Ex-Wife acquired the marital home as husband and wife through a quitclaim deed executed and recorded in 1985 after their marriage. Where property is jointly held by husband and wife, a strong presumption exists in favor of construing such assets as tenancy by the entireties property. *In re Hinton*, 378 B.R. 371, 376 (Bankr. M.D. Fla. 2007) (citing *Beal Bank*, 780 So.2d at 52).

In *In re Kossow*, 325 B.R. 478 (Bankr. S.D. Fla. 2005), the bankruptcy court considered whether tenancy by the entirety property is property of the estate when only one spouse files bankruptcy.

> Under Florida law, property held by a husband and wife as tenants by the entireties belongs to neither individual spouse, but to a separate entity referred to as the "unity" or "the marriage." Therefore, with limited exceptions, entireties property does not become property of the estate when only one spouse has filed a bankruptcy petition.

*Id.* at 483 (internal citations omitted); *see also* 11 U.S.C. §522(b). Following this analysis, if this Court adopted Debtor's position that the Oral Ruling was ineffective and the Final Judgment is void, then Debtor and Ex-Wife's marriage would not be dissolved, and the marital home would continue to be owned by them as tenants by the entireties. As tenancy by the entirety property, the marital home would not be property of the estate because Debtor is the sole debtor in his Bankruptcy Case. *Kossow*, 325 B.R. at 483. Under this logic, the Final Judgment would not have violated the stay with respect to the award of title to the marital home as alimony, as the marital home would not have been deemed property of the estate.

However, the Court is not swayed by Debtor's argument. The Court finds that, based upon Debtor filing the Motion to Stay in State Court following the Oral Ruling and the omission of the marital home on his original schedules, Debtor is judicially estopped from claiming the marital home as property of the estate. The Court further finds that the State Court's award of title to the marital home to Ex-Wife as alimony did not violate the automatic stay because it did not involve the division of property of the estate.

The Final Judgment qualified under the exception to the automatic stay solely to the extent that it addressed dissolution of the marriage and payment of the alimony as a domestic support obligation. The domestic support obligation consisted of alimony payable through the transfer of title to the marital home previously owned by Debtor and Ex-Wife as tenants by the entireties, and, as discussed *infra*, the liquidation of the legal fees due Attorney Gisondo.

### The Necessity of Stay Relief

Debtor failed to list the marital home in his original schedules as property of the estate and waited until January 23, 2019 to file those schedules. As of the date of the Final Hearing, the only information that Ex-Wife's marital attorney had about Debtor's bankruptcy was simply that it had been filed. The filing and service of the suggestion of bankruptcy on Ex-Wife's attorney through the Florida E-Filing portal provided her sole form and manner of notice.

Receipt of the suggestion of bankruptcy should have impelled Attorney Gisondo to immediately seek relief from the automatic stay to proceed with the Final Hearing, submission of the Final Judgment, and filing of the Motion to Compel. Although stay relief was not required with respect to the portion of the Final Judgment ordering dissolution of Debtor's and Ex-Wife's marriage, it would have nonetheless been appropriate for Attorney Gisondo to seek stay relief for two reasons. First, as of the date of the Final Hearing, Attorney Gisondo could not have known whether Debtor was asserting an interest in the marital home because Debtor had

not yet filed his initial schedules.[7] Second, the proposed Final Judgment liquidated Ex-Wife's attorneys' fees, and both the Final Judgment and the Motion to Compel directed Debtor to pay those fees.

Section 362(a)(6) of the Bankruptcy Code provides:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of— (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title. . . .

Attorney Gisondo knew that the proposed Final Judgment awarded title to the marital home to Ex-Wife and liquidated his fees for representing Ex-Wife with a direction to Debtor to pay such fees. The exception from the automatic stay for dissolution proceedings extends to the declaration of dissolution of the marriage but does not encompass a division of marital property that is property of the estate or the payment of a domestic support obligation from property of the estate. *See Carver v. Carver*, 954 F.2d at 1577; 11 U.S.C. §362(b)(2)(A)(ii) and (iv).

If Attorney Gisondo had reviewed the docket in Debtor's Bankruptcy Case prior to the date of the Final Hearing, he would have learned that Debtor sought relief under chapter 11 of the Bankruptcy Code, which meant that all of Debtor's post-petition earnings constitute property of the estate. *See* 11 U.S.C. §1115(a)(2). The only source that Debtor could use to pay Attorney Gisondo's fees would either be cash

---

[7] As noted above, Debtor failed to list the marital home on his initial set of schedules and had previously indicated his apparent understanding that he no longer held an interest in the marital home as a result of the Oral Ruling, as discussed above.

owned by Debtor as of the Petition Date or post-petition earnings. In either case, those assets constitute property of the estate.

Further, before Debtor filed his schedules, Attorney Gisondo could not have determined whether the marital home constituted property of the estate. As a result, Attorney Gisondo should have sought stay relief to ensure that entry of the Final Judgment would not violate the automatic stay. Attorney Gisondo's failure to seek stay relief prior to filing the Motion to Compel further demonstrates that this filing and the submission of the Final Judgment were both willful acts that violated the automatic stay.

> To establish a willful violation of the automatic stay, the movant bears the burden of showing by a preponderance of the evidence that: (1) a bankruptcy petition was filed; (2) the violator received notice of the petition; and (3) the violator's actions were in willful violation of the automatic stay. A violation is willful if the violator knew of the bankruptcy case and intentionally committed the violative act; it does not matter whether the violator specifically intended to violate the stay.

*In re Daya Medicals, Inc.,* 560 B.R. 855, 859 (Bankr. S.D. Fla. 2016) (Kimball, J.) (internal citations omitted).

Normally, a party who willfully violates the automatic stay can be liable to the debtor for actual damages, including costs and attorneys' fees. *See* 11 U.S.C. §362(k). In appropriate circumstances, the debtor may also be entitled to recover punitive damages. *Id.* Debtor waived his right to recover sanctions against Ex-Wife and Attorney Gisondo in the interests of proceeding with the evidentiary hearing on the Motion at the scheduled date and time. Notwithstanding this waiver, the Court likely would not have awarded any punitive sanctions based upon guidance from the Eleventh Circuit in *Carver. See* 954 F.2d at 1579-1580.

The Eleventh Circuit's decision in *Carver* is squarely on point. In that case, Edward Carver, a chapter 13 debtor, sought to have his former wife and her attorney held in contempt for violation of the automatic stay arising from efforts to enforce the payment of child support and mortgage payments on the marital home. Just as in this case, Mr. Carver failed to list his ex-wife as a creditor in his bankruptcy case. Mr. Carver also failed to notify his ex-wife's attorney. *Carver*, 954 F.2d at 1574-75.

The ex-wife's attorney learned of Mr. Carver's bankruptcy filing three days after a motion to compel was filed, when he received a copy of the first page of the petition from a state court in which a foreclosure action against the marital home had been filed. *Id.* at 1575. Although the ex-wife's attorney attempted to obtain a copy of the petition and chapter 13 plan from Mr. Carver's bankruptcy attorney, he was unsuccessful in doing so. *Id.*

At a hearing in family court to enforce the payment of child support and mortgage obligations, Mr. Carver was not represented by counsel. *Id.* The ex-wife's counsel argued that Mr. Carver's bankruptcy filing did not stay matters in family court regarding child support payments. *Id.* The family court held Mr. Carver in contempt and incarcerated him until he arranged for his new wife to pay the past due child support and mortgage obligations from money borrowed from her father. *Id.* Following that, Mr. Carver filed an action in bankruptcy court seeking damages for a willful violation of the automatic stay. *Id.* Both the bankruptcy court and the district court found that a stay violation had occurred and awarded damages to the debtor. *Id.* at 1576.

On appeal, the Eleventh Circuit analyzed the situation differently. After considering the provisions of the Bankruptcy Code that imposed both the automatic stay and exceptions to the automatic stay, the Eleventh Circuit concluded that by limiting the exception for family law proceedings to those situations that do not implicate property of the estate, the exception was of little value to a debtor whose post-petition earnings are included in property of the estate. *Id.* at 1577. This would include both debtors under chapter 11 and chapter 13.

As a result, the Eleventh Circuit concluded that the proper course of action was for the ex-wife to have sought stay relief. *Id.* at 1577-78. In noting that a motion for stay relief should have been filed, the appellate court also encouraged bankruptcy courts to grant stay relief in connection with family law matters on the basis of cause:

> When requested, such relief should be liberally granted in situations involving alimony, maintenance, or support in order to avoid entangling the federal court in family law matters best left to state court. Moreover, "it would result in great injustice to require children to await a bankruptcy court's confirmation of a debtor's Chapter 13 plan before permitting them to enforce their state court-determined right to collect past due support payments." Such considerations clearly constitute "cause" for which relief from stay may be granted under § 362(d)(1).

*Id.* at 1578 (internal citations omitted).

This Court therefore concludes that Ex-Wife's marital attorney should have sought stay relief prior to obtaining the Final Judgment and filing the motion to compel.

This determination requires the Court to consider whether Debtor is entitled to any remedy for this stay violation. Insofar as Debtor incurred fees in connection with the Motion, Attorney Gasparri may be entitled to payment for his reasonable fees and costs in filing the Motion and attending the evidentiary hearing. However,

based upon (i) the Eleventh Circuit's directive in *Carver*, and (ii) Debtor's waiver of his claim for sanctions due to Attorney Gasparri's failure to issue a subpoena to Attorney Gisondo prior to the Evidentiary Hearing, the Court will not award punitive sanctions to Debtor, and will only consider whether compensatory sanctions are appropriate.

## **Abstention**

The Court has previously determined that Debtor should be estopped from claiming that entry of the Final Judgment, to the extent it awarded title to the marital home to Ex-Wife as alimony, constituted a stay violation as of the date of the Final Judgment. However, the Final Judgment not only awarded Ex-Wife title to the marital home as past due and future alimony, it also awarded her counsel his fees and directed Debtor to pay them. In this regard, the Court must carefully analyze the Final Judgment to determine if the fee award and payment direction violated the automatic stay.

Other courts which have considered the award of attorneys' fees in family law proceedings have concluded that the award of such fees constitutes a non-dischargeable domestic support obligation. *Backburn-Garner v. Edwards (In re Edwards),* 261 B.R. 523, 527 (Bankr. M.D. Fla. 2001). *C.f. In re Hansman*, Adv. Proc. No. 16-01093, 2016 WL 4069621, at *3 (Bankr. S.D. Fla. July 28, 2016) (discussing payments determined to be in the nature of support)*; In re Palomino*, 355 B.R. at 357 (same).

It is certainly helpful to this Court to have had the amount of Attorney Gisondo's fees liquidated. Federal courts regularly look to state courts to liquidate a fee award when the state court has special expertise or has overseen the efforts of the counsel to whom fees are awarded. This is consistent with the general rule that federal courts should avoid venturing into family law matters. In matters involving alimony, maintenance, or support, federal courts generally abstain in favor of the state courts addressing such matters.

> The reasons for federal abstention in these cases are apparent: the strong state interest in domestic relations matters, the competence of state courts in settling family disputes, the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts.

*Crouch v. Crouch*, 566 F.2d 486, 487 (5th Cir. 1978) (internal citations omitted).

The Eleventh Circuit Court of Appeals cited *Crouch* with approval in *Carver*, and concluded that federal courts should not second guess state courts on family law matters.

> Decisions which involve alimony or child support, often under continuing supervision by the state courts, could require the bankruptcy court to second guess the state court on such matters and could produce conflicting court decrees further aggravating an already delicate situation.

*Carver*, 954 F.2d at 1579. The Eleventh Circuit noted the deference federal courts should afford state courts given their expertise in family law matters. The *Carver* court also observed that domestic support obligations are not dischargeable in bankruptcy pursuant to 11 U.S.C. §543. *Id*. Finally, the *Carver* court recognized the

25

danger of a bankruptcy case being used as a weapon in a long-standing dispute between estranged or former spouses, or as a shield to avoid family obligations. *Id*.

With these concerns in mind, the Eleventh Circuit encouraged bankruptcy courts to strongly consider abstention when faced with family law issues.

> In our opinion, bankruptcy and district courts should tread very carefully when asked to impose sanctions for violation of the automatic stay where the actions underlying the violation involve alimony, maintenance, or support. In each case, the court should carefully sift through the facts, keeping in mind the purposes of the automatic stay provision as well as concerns of justice, comity, and judicial economy that support abstention in domestic relations cases.

*Id*. at 1579-80.

In *Carver*, the Eleventh Circuit concluded that the bankruptcy court should have abstained from considering the stay relief violation for several reasons. First, the purposes underlying the automatic stay would not be served by a damage award. *Id*. at 1580. Second, the debtor created the situation which resulted in the stay violation occurring by not paying child support and the mortgage obligations, and failing to raise the fact of his bankruptcy filing in the family court proceeding. *Id*. Third, it was clear that the debtor's bankruptcy case was being used as a weapon in the former spouses' on-going dispute. *Id*. As a result, the court concluded, "Under such circumstances, the interests of comity weigh heavily in favor of abstention." *Id*.

Debtor's situation is remarkably similar to the facts described in *Carver*. First, although Debtor has waived a monetary sanction in connection with his Motion, the Court would be hard-pressed to find that a punitive sanctions award against Ex-Wife and Attorney Gisondo serves the underlying purpose of the automatic stay. *See id*. (finding punitive damage award inappropriate where other creditors were not

harmed by asserted stay violation). Second, Debtor created the situation that resulted in the stay violation by not informing all parties of his Bankruptcy Case at the Final Hearing, and failing to include the marital home in his initial schedules. Third, given the eight years that Debtor and Ex-Wife have been litigating over their divorce, it is not far-fetched to view this Bankruptcy Case as just another weapon in Debtor's arsenal to avoid paying alimony to Ex-Wife and the legal fees due to her counsel.

If the Ex-Wife had filed a motion for stay relief prior to the Final Hearing, this Court likely would have granted relief to permit exactly what happened: dissolution of the marriage, award of alimony, direction to Debtor to execute the deed transferring title to the marital home to Ex-Wife, and liquidation of the legal fees due to Attorney Gisondo. What the Court would not have permitted is a direction to Debtor to *immediately* pay the legal fees due to Attorney Gisondo. The payment of Attorney Gisondo's fees will have to await confirmation and substantial consummation of Debtor's chapter 11 plan.

## The Effect of the Oral Ruling

Ex-Wife has argued that yet another reason exists for this Court not to construe the entire Final Judgment as a stay violation. She asserts that the Oral Ruling was effective as an order of the State Court immediately upon issuance at the Final Hearing. Under this theory, the subsequent entry of the Final Judgment was merely a ministerial act that did not violate the automatic stay, much like the filing of a document to perfect a security interest or lien on property pursuant to 11 U.S.C. §362(b)(3).

Several Florida appellate courts have considered arguments of this nature in the context of a motion for recusal of a trial judge. The issue in those cases is whether a trial judge who has heard testimony and arguments and rendered an oral ruling prior to a motion to disqualify can later reduce to writing the oral ruling. Florida appellate courts have concluded that, notwithstanding a motion to disqualify, a judge retains authority to perform the ministerial act of reducing the oral ruling to writing. *See Florida Bar v. Wilson*, 714 So.2d 381, 383 (Fla. 1998) (citing *Fischer v. Knuck*, 497 So.2d 240, 243 (Fla. 1986) and determining that trial judge has authority to reduce prior oral ruling to writing after filing of motion to disqualify); *Fernwoods Condo. Ass'n. #2, Inc. v. Alonso,* 26 So.3d 27, 29 (Fla. 3rd DCA 2009) (judge who has rendered oral ruling retains authority to perform ministerial act of reducing ruling to writing); *Berry v. Berry*, 765 So.2d 855, 857 (Fla. 5th DCA 2000) (act is ministerial because it merely memorializes oral ruling and does not require judge to further exercise discretion).

The Eleventh Circuit has also found that an oral ruling is effective when rendered by a bankruptcy court. In *IBT Int'l Admin. Servs. v. Northern (In re International Administrative Services, Inc.)*, 408 F.3d 689 (11th Cir. 2005), the Court of Appeals considered whether a bankruptcy judge's oral ruling extending the statute of limitations was effective. The Court stated:

> In this instance, the time at which the written order was entered by the court and file-stamped by the clerk is irrelevant to the time of its effectiveness. "A judgment is not what is entered but what was directed by the court ... In the very nature of things, the act must be perfect before its history can be so; and the imperfection or neglect of its history fails to modify or obliterate the act." *In re Ackermann*, 82 F.2d 971, 973 (6th

Cir.1936) (citation omitted). Other courts have treated oral orders similarly. *See, e.g., Noli v. Commissioner*, 860 F.2d 1521, 1525 (9th Cir.1988) (holding a bankruptcy's court oral order binding and effective despite the court's failure to enter it on the docket). Thus, a court's order is complete when made, not when it is reduced to paper and entered on the docket. *See also Dalton v. Bowers*, 53 F.2d 373, 374 (2d Cir.1931) ("Entry is for most purposes not necessary to the validity of an order.").

*Id.* at 700.

Based upon this precedent, the Court finds that the Oral Ruling was effective when the State Court rendered it on November 27, 2018, and that entry of the Final Judgment at the end of the Final Hearing was merely a ministerial act. Consequently, the Court concludes that no stay violation occurred when the Final Judgment was entered.

## **Request for Order to Show Cause**

Notwithstanding the Court's determination that entry of the Final Judgment did not violate the automatic stay, the commencement of this Bankruptcy Case did affect one directive included in the Final Judgment, namely the requirement that Debtor immediately begin paying Attorney Gisondo's fee award. Following the commencement of Debtor's Bankruptcy Case, the automatic stay prevented Attorney Gisondo from seeking to enforce payment of the legal fees from Debtor's post-petition earnings or from property of the estate. The Court finds that the filing of the Motion to Compel constituted a willful violation of the automatic stay. Attorney Gisondo should have sought stay relief from this Court prior to filing the Motion to Compel. The Court will grant Debtor's *ore tenus* request for an order to show cause why Attorney Gisondo should not be held in contempt for violating the automatic stay, and sanctioned in the amount of the legal fees claimed by Debtor's counsel to

prosecute the Motion. *See In re McBride*, 473 B.R. 813, 822 (S.D. Ala. 2012) (compensatory damages appropriate, but punitive damages not warranted, based upon a one-time incident, as opposed to ongoing conduct).

Because the Court has found that the marital home is not property of the estate, it is not treated in the same manner as the legal fees due to Attorney Gisondo. Further, considering the immediate need of Ex-Wife to obtain the benefit of the alimony ordered by the State Court, and as a matter of comity with the State Court, the Court finds that the State Court retains jurisdiction to direct Debtor to immediately execute the quitclaim deed in favor of Ex-Wife. However, Attorney Gisondo will have to await a distribution under Debtor's chapter 11 plan in respect of his fees. Given that the Court has determined that the legal fees constitute a portion of the domestic support obligation ordered by the State Court, this Court determines that such fees are non-dischargeable and will have to be paid in full under Debtor's plan of reorganization.

Accordingly, the Court ORDERS and ADJUDGES that:

1. The Motion is GRANTED, in part, and DENIED, in part.

2. The Motion is DENIED to the extent it seeks (a) to void the entire Final Judgment, and (b) vacatur of the Final Judgment.

3. The Final Judgment is valid and enforceable to the extent that it provides for: (a) the dissolution of the marriage of Debtor and Ex-Wife; (b) the award of lump sum alimony in the form of Debtor's one-half interest in the marital home; (c) the distribution of the *custodia legis* funds, including the determination of any pending charging liens; (d) the liquidation of the

attorney's fees due to Ex-Wife's marital attorney; (e) the determination that such fees are the obligation of Debtor; (f) the restoration of Ex-Wife's maiden name; and (g) the reservation of jurisdiction by the State Court, except to the extent that any ruling of the State Court potentially affects property of Debtor's bankruptcy estate.

4. For the sake of clarity, notwithstanding the pendency of this Bankruptcy Case, the State Court retains jurisdiction to direct Debtor to immediately execute and deliver to Ex-Wife a quitclaim deed in respect of the marital home. To the extent that this Court might have jurisdiction to determine any matters relating to execution or delivery of the quitclaim deed, the Court ABSTAINS from any such determination.

5. The Motion is GRANTED to the extent that it seeks a direction to Ex-Wife and her marital attorney to cease collection efforts against property of the estate in respect of the attorneys' fees awarded to Attorney Gisondo.

6. Ex-Wife's motion to lift the stay, retroactively to January 16, 2019, is GRANTED in order to deem entry of the Final Judgment valid and enforceable for all purposes other than the direction to Debtor to immediately pay Ex-Wife's attorney for her legal fees.

7. Debtor's *ore tenus* motion for an order to show cause why Attorney Gisondo should not be held in contempt for violating the automatic stay, is GRANTED.

8. Attorney Gisondo is directed to appear before this Court at a hearing on **June 4, 2019, at 11:00 a.m**., at the United States Bankruptcy Court, 1515 N. Flagler Drive, Courtroom 801A, West Palm Beach, Florida to show cause why he should not be (a) held in contempt of court as a result of the violation of the automatic stay arising from (i) the filing of the Motion to Compel and refusal to withdraw such motion, and (ii) his failure to file a motion seeking relief from the automatic stay in this Court prior to submitting the Final Judgment to the State Court, and (b) sanctioned in the sum of $1,050 to compensate Debtor's counsel for the cost of preparing and attending the evidentiary hearing on the Motion, pursuant to 11 U.S.C. §362(k).

####

Copies furnished to:

All interested parties by Counsel for Debtor.